IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>COR CLEARING, LLC,<br><br>Defendant. | 8:16CV557<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant and counter-claimant COR Clearing, LLC's ("COR") Motion for Partial Judgment on the Pleadings (Filing No. 50) and Motion to Strike (Filing No. 77), and plaintiff and counter-defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment (Filing No. 85). *See* Fed. R. Civ. P. 12(c) and (f) and 56. With jurisdiction under 28 U.S.C. § 1332,[1] the Court grants the Motion for Summary Judgment and denies the remaining motions as moot.[2]

## I. BACKGROUND[3]

COR is a settlement and clearing firm that allows independent broker dealers to buy and sell stock for their customers. COR maintains offices in Nebraska, California, and New Jersey. Its President and Chief Financial Officer ("CFO") both work in the Nebraska office, and its Chief Executive Officer works in the California office.

---

[1]COR is a limited liability company whose sole member is COR Securities Holdings, Inc., which is incorporated in Delaware and maintains its principal place of business in California. Federal is incorporated in Indiana and has its principal place of business in New Jersey. The dispute involves approximately $2 million of bond coverage.

[2]A Motion to Extend Discovery Deadlines (Filing No. 56), Motion to Stay the Motion for Partial Judgment on the Pleadings (Filing No. 60), and joint Motion to Continue the Trial Date (Filing No. 99) are also pending. Those motions are also denied as moot.

[3]Except where noted, these facts are undisputed and are taken from the parties' statements of facts and admissions or from documents whose authenticity is undisputed.

Indian Harbor Insurance Company ("Indian Harbor")[4] issued liability policies to COR effective from December 27, 2013, to February 27, 2015, and February 27, 2015 to February 27, 2016 (the "XL policies"). Federal issued a financial institution bond (the "bond") to COR effective from April 15, 2014, to April 15, 2015, and COR renewed the bond effective April 15, 2015, to April 15, 2016. The bond contains four insuring clauses—1.A, 1.B, 1.D, and 4—and six exclusions—2.e, 2.f, 2.1, 2.k, 2.m, and 3.a—that are at issue in this case.

In August of 2013, COR hired Christopher Cervino ("Cervino") as a registered representative to work at COR's Equity Desk located in Edison, New Jersey. Cervino's duties and responsibilities were limited to executing trades as directed by clients. He was prohibited from soliciting trades.

In the summer of 2014, COR began to investigate customer complaints that accounts overseen by Cervino had allegedly been opened without the customers' knowledge or permission, and that unauthorized stock trades in a company named VGTel Inc. ("VGTL") had been placed in those accounts. Cervino initially claimed the customer was always present on the phone when he was placing trades but later admitted that was not the case. COR ultimately terminated Cervino for violating COR's policy regarding acceptance of orders from someone other than the account holder without the proper authorization on file.

Later that year, Helen Cherry named COR as a party in a Financial Industry Regulatory Authority ("FINRA") arbitration ("Cherry Arbitration") and filed a Statement of Claim ("Cherry Statement") in the Cherry Arbitration alleging that Larry Werbel, who

---

[4]Indian Harbor apparently operates as a subsidiary of XL Specialty Insurance Company. The parties refer to Indian Harbor and XL interchangeably.

was not a COR employee, convinced her to invest in VGTL stock. Cherry averred she suffered financial loss resulting from her investment in VGTL.

On April 29, 2015, Carl Alexen and twenty-one other claimants (collectively, the "Alexen Claimants") filed a FINRA arbitration ("Alexen Arbitration") against COR. The Alexen Claimants alleged they were the victims of unauthorized trades masterminded by Edward Andrew Durante ("Durante"), who was not a COR employee, and involving Cervino. The Alexen Claimants sought to recover "compensatory and other damages of approximately $6,000,000."

On December 18, 2015, the Securities and Exchange Commission ("SEC") unsealed an indictment against Durante. On January 6, 2016, the SEC filed an amended criminal indictment against the alleged participants in the VGTL scheme including Cervino.[5]

COR settled the Cherry Arbitration for $80,000 on January 5, 2016, and settled the Alexen Arbitration for $2,000,000 in August of 2016. Also in 2016, COR submitted claims to both Indian Harbor under the XL Policies and Federal under the bond. COR ultimately received some funds from Indian Harbor, but the nature of the remuneration is disputed. COR has not received any funds from Federal.

On December 22, 2016, Federal filed a five-count Complaint (Filing No. 1) in this case requesting declaratory judgment. Count I requested a declaration that COR's claim was not covered by any of the insuring clauses and that Exclusion 2.e applied. The remaining four counts requested declarations that Exclusions 2.f, 2.i, 2.k, and 2.m applied, respectively.

---

[5]On March 22, 2017, following a sixteen-day jury trial in the United States District Court for the Southern District of New York, at which more than twenty witnesses testified, Cervino was convicted of securities fraud, conspiracy to commit security fraud, wire fraud, and conspiracy to commit wire fraud.

In its Answer (Filing No. 18), COR included a counterclaim for breach of contract against Federal, alleging it was entitled to coverage under insuring clauses 1.A, 1.B, 1.D, and 4.[6] COR moved for partial judgment on the pleadings (Filing No. 50), and Federal moved to strike (Filing No. 77) one of COR's filings and also moved for summary judgment (Filing No. 85).

## II. DISCUSSION

"If there is 'no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate.'" *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013).

### A. Choice of Law

COR asserts New Jersey law applies to the interpretation of the bond. Federal claims Nebraska law applies. A federal court sitting in diversity generally should apply the substantive law of the state in which it sits, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In cases involving a dispute over interpretation of an insurance contract or bond, Nebraska uses the Restatement (Second) of Conflict of Laws. *See Johnson v. U.S. Fid. & Guar. Co.*, 696 N.W.2d 431, 441 (Neb. 2005) (analyzing the Restatement (Second) of Conflict of Laws §§ 188 and 193 to determine controlling law for interpreting a contract).

---

[6]Federal's Complaint only identified insuring clauses 1.B, 1.D, and 4 as being at issue. The Court will analyze all four insuring clauses but notes COR only offered argument in its Brief in Opposition to Summary Judgment (Filing No. 91) on Insuring Clause 1.B.

4

The Court should interpret a fidelity bond under "the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 193. COR argues that the principle location of the insured risk is New Jersey because the bond covered employee misconduct in the New Jersey office. However, the bond would have also covered employee misconduct in the Nebraska and California offices.[7] Because there is no single principal location of the insured risk, the Court turns to § 188, which applies the principles of § 6 to contracts.

Under § 188, the relevant state contacts to analyze are "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id*. § 188.

COR's primary place of business is Nebraska,[8] as evidenced by the presence of the company's President and CFO and the address COR listed on its renewal application. Federal's primary place of business is New Jersey. The contract was presumably negotiated from both companies' primary place of business. The record is unclear as to the place of performance, and the location of the subject matter are all three states in which COR maintains an office. Finally, "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect[.]" *Id*. cmt. e. In this case, the last act necessary to make the contract binding was Federal's acceptance of the application for the bond. Although a close question, after

---

[7]Comment f of § 193 does not apply because the bond does not contain special statutory forms for each state; rather, the bond applies generically to each state. *See St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters.*, 526 F.3d 1166, 1168 (8th Cir. 2008).

[8]Although COR's primary place of business has no bearing on its citizenship because it is an LLC, it may be considered for choice-of-law purposes.

analyzing the issue under § 188 the Court concludes New Jersey has a more significant relationship to the transaction and the parties than Nebraska.

### B. Coverage

"[T]he words of an insurance policy should be given their plain meaning." *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). "The interpretation and construction of a contract is a matter of law for the trial court[.]" *Cumberland Farms, Inc. v. N.J. Dep't. of Envtl. Prot.*, 148 A.2d 767, 776 (N.J. Super. Ct. App. Div. 2016).

#### 1. Insuring Clause 1.A

Insuring Clause 1.A covers "Loss resulting directly from dishonest acts, other than stated in 1.B. below, of any **Employee**, . . . which result in improper personal financial gain . . . or which acts were committed with the intent to cause [COR] to sustain such loss."

All of the evidence submitted shows that Cervino's dishonest acts involved making unauthorized trades allegedly on the behalf of customers at the behest of other members of the scheme. Because Insuring Clause 1.B specifically covers "Loss resulting directly from dishonest acts of any **Employee** . . . which arises totally or partially from [] any **Trade**," Insuring Clause 1.A's exception applies. Insuring Clause 1.A does not apply to the conduct in this case.[9]

#### 2. Insuring Clause 1.B

Insuring Clause 1.B covers "Loss resulting directly from dishonest acts of any **Employee** . . . which arises totally or partially from [] any **Trade**." COR is required to "establish that the loss was directly caused by dishonest acts of any **Employee** which result

---

[9] Insuring Clause 1.A also does not apply because, as discussed later, COR's loss did not result directly from Cervino's actions.

in improper personal financial gain to such **Employee** and which acts were committed with the intent to cause [COR] to sustain such loss."

Federal makes three arguments why Insuring Clause 1.B does not apply. First, Federal claims COR did not suffer a loss because "it did not bear ultimate financial responsibility for the alleged settlements" as COR had liability insurance. Second, Federal argues the settlement payments constituted indirect loss, not direct loss. Finally, Federal asserts Cervino did not intend to cause COR to sustain any loss.

### a. Loss

Federal claims COR did not sustain any loss because COR received payouts under the XL policies covering all but $80,000 of the settlement amounts, and the deductible under the bond is $200,000. This argument is not persuasive because COR disputes the facts underlying Federal's contention and the term "loss" encompasses any loss COR sustained, even if it is below the deductible. The issue of loss in excess of any deductible is more properly dealt with under Exclusion 8 which states in part, "[Federal] shall be liable under this Bond only for the amount by which any **Single Loss** is greater than the applicable DEDUCTIBLE AMOUNT[.]"

### b. Direct or Indirect

Federal asserts payments made to settle claims brought by third parties do not constitute a loss directly caused by Cervino's "dishonest acts." COR argues that those types of payments are direct losses if proximately caused by the employee's acts. *See Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 386-87 (N.J. 2004) ("In view of the prevailing approach . . . to defining direct loss, in whatever type of policy that term arose, we adopt the conventional proximate cause test as the correct standard to apply when determining whether a loss resulted from the dishonest acts of an employee.").

In *Gentilini*, the only New Jersey case cited by COR on this topic, an employee "engaged in numerous credit-application frauds over the course of an eleven-month period,

7

leading to the sale of twenty-seven automobiles to customers who otherwise would not have qualified for credit." *Id*. at 381. The Supreme Court of New Jersey concluded, "Gentilini sustained a direct loss . . . when it was induced by [the employee's] fraudulent acts to hand over automobiles in exchange for installment sales contracts signed by non-creditworthy customers." *Id*. at 387. In other words, the direct loss was the transfer of valuable assets in exchange for promises that were less valuable than Gentilini originally thought. "Thus, any loss to Gentilini resulting from the default of the purchasers on the sale of the automobiles was proximately, and therefore directly, the result of [the employee's] actions." *Id*.

Contrary to COR's assertion that "the facts of this case are not materially different than the facts in *Gentilini*," this case is easily distinguishable. The only loss COR suffered was payments made to settle claims brought by third parties for their losses. COR did not suffer any risk that its own assets could be directly lost as a result of Cervino's actions. Like *Gentilini*, this case deals with a fidelity bond, not liability or indemnity insurance. *See id*. at 388, 399. The bond only "protects [COR] in the context of employee dishonesty and does not concern liability to *third parties*[.]" *Id*. at 400.

The federal court cases cited with approval in *Gentilini*, *id*. at 386, concur with this conclusion. *See Scirex Corp. v. Fed. Ins. Co.*, 313 F.3d 841, 848-49 (3rd Cir. 2002) (holding that the expenses of re-doing clinical trials after discovering nurses forged the original trials were direct losses); *FDIC v. Nat'l Union Ins. Co.*, 205 F.3d 66, 76 (2nd Cir. 2000) ("The [direct] loss in the present case, however, is the Bank's issuance of a loan and not the replacement of funds to a third party who has sued the Bank because of Folks's actions."); *Resolution Trust Corp. v. Fid. & Deposit Co. of Maryland*, 205 F.3d 615, 654 (3rd Cir. 2000) (stating unpaid extensions of credit and additional loans could be direct losses as a result of employee misconduct); *Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1282 (3rd Cir. 1992) (finding a bank suffered a direct loss when it loaned $600,000 and was not repaid); *First Nat'l Bank v. Lustig*, 961 F.2d 1162, 1167-68 (5th Cir.

1992) (reasoning a dishonest act that causes a bank to make a loan that is not repaid could be the direct cause of the loss).

COR has not presented evidence creating a genuine dispute as to whether its losses were directly caused by Cervino's misconduct.

### c. Intent

Federal claims Insuring Clause 1.B is also inapplicable because Cervino's acts were not committed "with the intent to cause [COR] to sustain" any loss. Again citing only *Gentilini* for the status of New Jersey law, COR argues intent is not appropriate to resolve on summary judgment, and, alternatively, that Cervino possessed the requisite intent.

New Jersey has adopted the substantial-certainty test, *Gentilini*, 854 A.2d at 392, which "focuses in part upon the subjective state of mind of the actor to determine whether manifest intent was present in light of all surrounding circumstances." *Id*. at 389 (quoting Toni Scott Reed, *Employee Theft Versus Manifest Intent: The Changing Landscape of Commercial Crime Coverage*, 36 Tort & Ins. L.J. 43, 55 (2000)). When the employee does not embezzle or intend to benefit the employer at the expense of a third party, "intent becomes a disputed issue of fact generally not appropriate for disposition through summary judgment." *Id*. at 394.

The Court agrees that the issue of intent is not appropriate for summary judgment.[10]

---

[10] However, the Court is skeptical that COR could establish intent to cause a company loss when the loss was the result of third-party claims based on dishonesty. If that were the case, then any illegal act by an employee would be done with the intent to cause loss to a company because illegal acts necessarily expose a company to liability.

### 3. Insuring Clause 1.D

Insuring Clause 1.D covers the following:

Loss of **Customer's Property** resulting directly from the dishonest acts of a **Registered Representative**, . . . which arises totally or partially from the **Registered Representative**;

(1) soliciting such **Property** from the **Customer** when the property has not been in an account with [COR];

(2) instructing or advising the **Customer** to withdraw such **Property** from the **Customer's** account with [COR]; or

(3) instructing or advising the **Customer** to liquidate an investment, or terminate an insurance, annuity, futures or other contract,

provided, however, [COR] shall first establish that the loss was directly caused by dishonest acts of the **Registered Representative** which result in improper personal financial gain to such **Registered Representative** or other natural person acting in collusion with such **Registered Representative** and which acts were committed with the intent to cause the **Customer** to sustain such loss.

There is simply no evidence that Cervino (1) solicited property, (2) instructed customers to withdraw property from their accounts with COR, or (3) instructed or advised customers to liquidate or terminate anything. In fact, the basis of the allegations are that Cervino undertook actions without customer authorization. Insuring Clause 1.D does not apply.

### 4. Insuring Clause 4

Insuring Clause 4 covers the following:

Loss resulting directly from:

a. **Forgery** on, or fraudulent material alteration of, any **Negotiable Instrument** (other than an **Evidence of Debt**), **Acceptance**,

> **Withdrawal Order** or receipt for the withdrawal of **Property**, **Certificate of Deposit** or **Letter of Credit**, or
>
> b. transferring, paying or delivering any funds or other **Property**, or establishing any credit or giving any value in reliance on any written instructions to [COR] authorizing or acknowledging the transfer, payment, delivery or receipt of funds or other **Property** which instructions fraudulently purport to bear the handwritten signature of any customer of [COR], financial institution, or **Employee**, but which instructions either bear a **Forgery** or have been fraudulently materially altered without the knowledge and consent of such customer, financial institution, or **Employee**.

Insuring Clause 4 does not apply because COR has not presented evidence of forgery or material alteration of any of the applicable documents. Coverage under paragraph b. requires the forgery be done without the knowledge and consent of Cervino, who was a part of the conspiracy. Finally, Exclusion 3.a, which applies to Insuring Clause 4, states, "This bond does not directly or indirectly cover [] loss caused by a **Partner** or **Employee**[.]"

Because none of the Insuring Clauses apply, it is not necessary to interpret any remaining Exclusions.

## III. CONCLUSION

Insuring Clause 1.A does not apply because the conduct at issue is dealt with under Insuring Clause 1.B. Insuring Clause 1.B does not apply because the loss did not directly result from Cervino's actions. Insuring Clause 1.D does not apply because there is no evidence Cervino committed any of the covered actions. Insuring Clause 4 does not apply because there is no evidence of forgery of the covered documents and because recovery for Cervino's actions is precluded by Exclusion 3.a. Accordingly,

> IT IS ORDERED:
> 1. Plaintiff and counter-defendant Federal Insurance Company's Motion for Summary Judgment (Filing No. 85) is granted.

2. Defendant and counter-claimant COR Clearing, LLC's claim for reimbursement under the financial institution bond is not covered.

3. COR Clearing, LLC's counterclaim is dismissed with prejudice.

4. COR Clearing, LLC's Motion for Partial Judgment on the Pleadings (Filing No. 50) and Motion to Strike (Filing No. 77) are denied as moot.

5. Federal Insurance Company's Motion to Extend Discovery Deadlines (Filing No. 56) and Motion to Stay the Motion for Partial Judgment on the Pleadings (Filing No. 60), as well as the parties' joint Motion to Continue the Trial Date (Filing No. 99) are denied as moot.

6. A separate judgment will be entered.

Dated this 25th day of July, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge